Charles M. DAVIS, Plaintiff,

v.

Ersala Ernestine DAVIS, Defendant.
No. 41488.

Supreme Court of Oklahoma.
Feb. 7, 1967.

Deaton & Gassaway, Ada, for plaintiff in error.

Fischl, Culp & McMillin, Ardmore, for defendant in error.

BLACKBIRD, Justice.

This appeal involves proceedings by defendant in error, hereinafter referred to as "plaintiff", to obtain modification of the child support provisions of the previous decree of her divorce from plaintiff in error, hereinafter referred to as "defendant".

At the time of the parties' marriage to each other, they had both been married once previously to others, and those marriages had also ended in divorces. In connection with his previous divorce, defendant was awarded custody of his daughter, Susan, who was approximately thirteen years of age at the time of his and plaintiff's divorce from each other. By the divorce decree, which dissolved her previous marriage, defendant was awarded custody of a son, Bill Allen Melton, born during that marriage. This boy was approximately eleven years old in 1961.

The child, whose support is involved here, is Dorothy Ella Davis, who was born either in late 1954 or early 1955, approximately a year after plaintiff's and defendant's marriage to each other. At the time of their subsequent divorce, in August, 1961, plaintiff was awarded custody of Dorothy Ella (hereinafter referred to merely as "Dorothy") who was then six years old, and $50.00 per month for Dorothy's support until she reached majority, or "until further order of the court." In addition, plaintiff was awarded the parties' 1960 model Chevrolet automobile, and all of their household furnishings and appliances, free and clear of the indebtedness on them, which defendant was ordered to pay. He was awarded the parties' two airplanes, one of which was a 1958 model 2-place Champion, and the other a 4-place Bonanza.

In the motion plaintiff filed in 1964 to institute the present modification proceedings, she cited the fact that Dorothy was then nine years old, and alleged that more was required for her maintenance, support and education than when the parties were divorced from each other in 1961 (and she was awarded $50.00 per month for this

child's support). She also alleged facts contemplated to show that defendant was in a better financial condition, and able to pay more for Dorothy's support, than in 1961. Upon the basis of these alleged "changes in condition", plaintiff prayed, among other things, for an increase in the monthly support payments from $50.00 to $100.00.

At the trial of this matter, in October, 1964, it was established that plaintiff had been living with Dorothy, and her son Bill Melton, in a house trailer, she is in the process of buying, at the Mobile Home Park near Lake Murray; that she had been working as a clerk in an Ardmore drug store for at least two years; that her only income, other than the child support money for Dorothy, was her monthly salary at the drug store in the amount of $206.06 after deductions for income taxes, social security, etc.; that the payments on the purchase of the house trailer are $53.57 per month, and her utility bills average from $40.00 to $50.00 per month additionally; that Dorothy was in the fourth grade at Admore's Franklin School; that plaintiff drives her to school each day from Lake Murray as she goes to work at the Ardmore drug store; that during the days, or parts of days, while plaintiff is working and Dorothy is not in school, Dorothy stays, until picked up by plaintiff, at the Ardmore home of defendant's 83-year-old mother, with whom his 16-year-old daughter, Susan, resides.

On the basis of plaintiff's testimony, the fixed annual expenses of maintaining Dorothy, when divided by 12 to arrive at a monthly average, are as follows: $3.75 for school lunches; $40.00 for her breakfast and supper at home; her one-third share of the house trailer payments, $17.75; sundries and personal hygienic needs, $8.00; sick and accident insurance premiums, $4.75; transportation to school, $7.50; one-third share of plaintiff's utilities, $16.00; clothing, $3.33; birthday parties and presents, $1.25; and school supplies, $1.40.

After plaintiff's testimony had shown that she received no support money for her son, Bill Melton, and had indicated that, on the basis of Dorothy's share of plaintiff's household expenses, plus her own personal expenses during the year 1963, the child's annual expenses totalled between $1400.00 and $1500.00, counsel for defendant asked plaintiff the following question on cross examination:

"Q Mrs. Davis, if it is going to cost $1500.00, a year, to support a litttle girl at age nine, how much would you say that it costs to support you?"

The court sustained plaintiff counsel's objection to this question on the ground that whatever it cost to support plaintiff was immaterial to the issues in this case.

Defendant's testimony established, among other things, that his annual income consists of the following: $3037.00 from the City of Ada for operating its municipal airport; net profit, above the cost of fuel and usual expenses, of $1800.00 for the flying inspection, or patrolling, of Oklahoma Gas & Electric Company's power lines; and approximately $300.00 for giving flying lessons.

It was also established that defendant lives in a house at the Ada Airport, free of any rental or utility bills, except charges for long distance telephone calls; that, since the parties' divorce, he has purchased a 1963 Chevrolet automobile, on whose purchase-price-loan he is making monthly payments of $79.92 each; and, that in January, 1964, he purchased an 80-acre farm home, at a price of $14,500.00 with the proceeds of a G. I. loan, which he repays at the rate of $99.00 per month. Defendant testified that, in addition to the above monthly payments, and the $50.00 per month he has been paying for Dorothy's support, he pays another $50.00 per month to his mother in Ardmore to apply on his daughter, Susan's expenses, and that Susan, who has had nurse's training, helps care for his aged mother, who is in poor health. The other expenses, to which defendant testified, were personal liability insurance premiums on his airplane and other insurance premiums on his auto.

These annual sums, when divided by 12, amount to $4.75 per month for the airplane insurance and $9.58 per month for the auto insurance.

At the close of the evidence, the trial court entered an order and/or judgment modifying the child support provisions of the divorce decree by increasing defendant's monthly payments from $50.00 to $85.00 each. Defendant thereafter filed a motion for a new trial, and, after it was overruled, perfected the present appeal.

Defendant's first, of two, "PROPOSITIONS" for reversal is: "The judgment of the court is not sustained by sufficient evidence and is contrary to law." Under this Proposition, defendant cites cases to the effect that a change in the parties' condition must be shown as a prerequisite to obtaining modification of a previous court provision for child support. Pursuant to his argument, we observe that there is no evidence in the record before us as to what was the cost of maintaining the child, Dorothy, in 1961, when the parties were divorced and she was only six years old; and defendant contends that the mere fact that Dorothy, at the time of the trial, was three years older, constituted no evidence in, and of, itself that her expenses have increased since that time. The point of his argument seems to be that since no such evidence was introduced, the evidence of Dorothy's present expenses presents no basis for comparison, and therefore shows no change of condition. Defendant's brief says: "Certainly the cost of support and educating a six-year-old school girl can't be very different from the cost of providing *the same necessities* for a nine-year old." (Emphasis added). This is a specious statement. We know, as a matter of common knowledge, that the necessities of a pre-school child, and those of one attending school, may not be the same, and that school children are likely to have some expenses that others do not have. Furthermore, defendant specifically testified that Dorothy's expenses had increased between August, 1961, and the date of the hearing on her motion.

Continuing his argument, concerning the asserted absence of any evidence showing a change of condition, defendant says there is nothing in the record to indicate that his financial condition was any better in 1964, when the judgment appealed from was entered, than it was in August, 1961, when the original court provision for Dorothy's support was made. We do not agree. While it is true that the record before us does not disclose what was the amount of defendant's income in 1961, evidence introduced in the subject modification proceedings does reveal that defendant did not have some of the same financial obligations then, that he was responsible for discharging earlier and at the time the parties were divorced. Under the provisions of the divorce decree defendant was obligated to finish paying for the parties' Chevrolet automobile, which as indicated, was therein awarded to plaintiff, as well as for household appliances, in addition to plaintiff's attorney's fee. As plaintiff points out, the record of her testimony shows that the monthly installments on the auto indebtedness was $79.00 per month, those on the appliance indebtedness were $35.00 per month, and the attorney's fee was $150.00. According to defendant's testimony at the trial, these obligations had all then "been paid". While, as hereinbefore noted, defendant is now paying $79.92 on another automobile of his own, he no longer has the appliance payments to make, and it is noted that the judgment appealed from increases his child support payments in that exact amount.

Defense counsel further say that, in view of the fact that defendant's total annual income is only about $5100.00 (or $428.00 per month) he had (previous to the court's raising his child support payments from $50.00 to $85.00) only $1245.00 per year for his fixed annual expenses with which to pay for his food, clothing, entertainment and other personal expenses. The defense further says that if the child support in-

crease ordered by the trial court becomes final, he will have only $820.00 left annually to pay such personal living costs. The answer to this is that his recent purchase of the $14,500.00 farm, for which he is paying at the rate of $99.00 per month, is not a "living cost", or necessary to his sustenance. If it were not for this added, and unnecessary, expense, defendant would have more than $200.00 per month to spend for food, clothing and other personal needs, and, even with the child support increase of $35.00, he will have more than $2,000.00 annually with which to defray those expenses, plus any repair, or maintenance, costs necessary to keep his airplane operating. If defendant keeps the farm, and fixes the water system into the residence located on it, so that it can be used as a home for him and his daughter, as his testimony indicated he planned to do, then it may be that she will reside with him there, instead of in Ardmore, where she now lives with his aged mother, and the cost of maintaining her will decrease.

■■ Defendant's brief mentions testimony to the effect that he has given money to, and purchased clothing for Dorothy, and that his mother and sister have made clothing for this child. The cost of such clothing contributions does not appear and cannot be evaluated, but such contributions of clothing were obviously taken into account in the very modest 40-dollar-per-year clothing item listed in plaintiff's testimony about the child's needs. The unrefuted items of Dorothy's monthly expenses, excluding any allowance for medical, dental, and ophthalmic needs, or music lessons, total more than $100.00 per month. We have thoroughly examined the evidence, and are of the opinion that it adequately supports the judgment appealed from, both in respect to the "change of conditions" referred to in defendant's argument, and as to the amount of the increase in the child support payments therein directed. Said judgment cannot be held to be clearly against the weight of the evidence. See Ness v. Ness, Okl., 357 P.2d 973.

Under defendant's second, and last, Proposition for reversal, he contends that the trial court erred in sustaining opposing counsel's objections to his counsel's interrogation of plaintiff concerning her own personal expenses and living costs, as hereinbefore indicated. Immediately after the asking of the hereinbefore quoted question, the record reveals the following colloquy between defense counsel and the court:

"By Mr. Deaton: If the Court please, the total income of a family, the way that it is expended is important because it must add up—in other words, if it doesn't add up—well, what I am trying to show is that it would cost more to support her, and if she doesn't have more to support her—she has less to support her, and therefore, the lion's share of all income it is being stated that it goes to the support of this child, and I am trying to illustrate that that can't be mathematically correct, in view of the income that they had.

\* \* \* \* \* \*

"By the Court: Well, it doesn't make any difference what it costs her. If she is making a thousand dollars, a month, it is still his duty to pay whatever he can afford to take care of this child."

■ In defendant's brief, it is pointed out that, with the $600.00 per year plaintiff has been receiving from him for Dorothy's support, added to her annual salary from the drug store, plaintiff has a total annual income of $3,072.00; whereas, according to plaintiff's testimony, Dorothy's total expenses, including medical, dental and ophthalmic needs for the year 1963, were $1425.00. Defendant's brief points out that $1425.00 is 46% of $3,072.00, and, on the premise that the lesser sum comprised a disproportionate part of the larger sum available to plaintiff for all three of the persons (herself and the two children) living in her household, defense counsel argues, in effect, that it was his prerogative to show, by interrogating plaintiff about her personal expenses, that her representa-

tion of Dorothy's needs was exaggerated. The record reveals no objection taken by defense counsel to the subject court ruling, but, be that as it may, we think that, in view of the fact that the trial court's judgment increased defendant's payments for Dorothy's support to a total of only $1020.-00, rather than to a larger sum, annually, and this figure fixed by the court, is adequately supported by the evidence, the court's failure to allow defense counsel to attempt to show, by questioning plaintiff about her own expenses, that her figures on Dorothy's expenses were too large, if error, was harmless under the circumstances. When the increase becomes effective, plaintiff's receipts for child support will be 29+% of the total funds coming into her hands, rather than the 46% used in defendant's argument.

As we have found no cause for reversal in the arguments presented by defendant, the judgment of the trial court is hereby affirmed.

IRWIN, V. C. J., and DAVISON, WILLIAMS, BERRY, HODGES, LAVENDER and McINERNEY, JJ., concur.